UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

_____

| | |
|---|---|
| CHRISTOPHER BROWN | ) |
| Plaintiff | ) Civil Action No. |
| v. | ) |
| | ) |
| DAMON DASH, AND | ) COMPLAINT |
| POPPINGTON LLC d/b/a DAME DASH STUDIOS | ) |
| Defendants | ) |

_____)

**JURISDICTION**

1.     This Court has jurisdiction pursuant to 28 USC 1332.  This court also has supplemental jurisdiction over related disputes between the parties pursuant to 28 U.S.C. 1367. This action is governed by the laws of the Commonwealth of Massachusetts and/or New York State. The amount in controversy exceeds $100,000.00.

**PARTIES**

2.     Christopher Brown ("Brown") is a Massachusetts resident with a business address of Brown & Rosen LLC, 100 State Street, Suite 900, Boston, MA 02109. Brown resides in Massachusetts.

3.     Damon Anthony Dash ("Dash") is a California resident and has an address of 13547 Ventura Blvd., Ste 199, Sherman Oaks, CA 91423 and 11975 Crest Place, Beverly Hills, CA 90210.

4.     Poppington LLC d/b/a Dame Dash Studios ("Poppington") is a New York limited liability company, New York DOS ID 4527652 and has an address of  13547 Ventura Blvd., Ste 199, Sherman Oaks, CA 91423. Poppington is a registered foreign entity in California and Rocket Lawyer Inc. is the registered agent. Dash is the Owner of Poppington. Poppington is a subscription based streaming service without subscribers from across the country, using the moniker www.damedashstudios.com.

1

## FACTS

5.      Brown is the Managing Member of Brown & Rosen LLC, a Massachusetts law firm. Brown is an Adjunct Professor at Boston College Law School and has been practicing law since graduating from Boston College Law School in 1998. In 2014, the federal government and Harvard University, requested that Brown attend a roundtable and discuss the legal framework of remixes in the music industry.  See Exhibit A. Brown grew up in New York City and is licensed to practice law in Massachusetts and New York.

6.      Dash is a celebrity and is the former business associate of the rapper/businessman/mogul Shawn "Jay-Z" Carter.


**Muddy Water/Webber Litigation**

7.      In 2016, Muddy Water Pictures LLC ("Muddy") begin to shot the film "The List" a/k/a "Dear Frank" ("film").  Muddy hired Josh Webber ("Webber") to be a director on the film. Webber is also the director of the film "Never Heard" starring, Robin Givens, Romeo Miller, David Banner, Kandi Burress, Karrueche Tran and others, which was theatrically released in 2018.

8.      Brown through his law firm Brown & Rosen LLC is legal counsel to Webber and Muddy.  Brown is counsel to Webber and Muddy in the matter of Webber, et al. v. Dash, et al, 19-610-CM in the Southern District Of New York ("Lawsuit 1"), before the Honorable United States Chief Justice Collen McMahon ("McMahon").

9.      In January 2019, Brown filed Lawsuit 1 on behalf of Muddy and Webber against the Defendants arguing and claiming that Dash falsely contended to be the owner of the copyright for the film, along with claims of defamation against Dash and his company Poppington.

10.    Defendants began in January-February 2019 to express their hatred relating to Brown's representation of Webber and Muddy, and began defaming Brown to McMahon and the public at large.

11.     Dash in February 2019 informed McMahon during Lawsuit 1 of his intent to make public statements about Brown and to defame Brown.

12.      Dash emailed McMahon and indicated that he was going to destroy Brown's legal career publicly and that Brown was a con-man.  See Exhibits B & C.

13.     In the very same emails at Exhibits B & C, Dash made threats to Brown which McMahon referred to law enforcement in February 2019. See Exhibit D.

14.     In the February 2019 email at Exhibit E, Dash stated to his Attorney Eric Howard, that Brown was a "con-man".  Dash also indicated that Brown was involved in robbing children in the same email.

15.     In a January 2019 posting on the official Poppington Instagram, Dash posted Exhibit F, indicating that Brown is a lawyer that makes a living helping bad people steal money from good people.

16.     In a January 2019 posting on the official Poppington Instagram, Dash posted Exhibit G, identifying Brown and stating that lawyers for "con artist are con artist".

17.     In a February 2019 posting on the official Poppington Instagram, Dash posted Exhibit H, stating that Brown is a crooked lawyer that robbed a 7 year old.

18.     In a video presentation in January 2019, Dash indicated to a third party that Brown was a con-man and in conversations with third parties. The conversation occurred with a person identified as the "Hip Hop Motivator".

19.     The statements at Exhibit B-H are untrue, defamatory and harmed Brown in his business. The Defendants are engaging in their plan to publicly defame Brown, just as Dash informed the Court they would in Exhibits B & C. The intent being to destroy Brown's career.

20.     In January-February 2019, Dash began his first wave of defamatory actions against Brown and posted material on the Official Poppington Instagram (damedashstudios) and his own Duskopoppington Instagram

(social media), which is knowingly untrue and defamatory. Dash sent the writing to various media outlets including TMZ, Variety, Page 6 (New York Post), theshaderoom, dailymail and others. Dash has over seven hundred thousand (700,000) followers on Instagram. Dash has personally published defamatory statements about the Plaintiff with the consent and aid of Poppington, the company in which he owns.  Dash and Poppington have published to over 700,000 individuals that Brown was a "crooked lawyer" that "robbed" a 7 year old child associated with the film *The Jump Out Boys*. Exhibit H. Brown does not know the child at Exhibit H, and has no financial interest in the film *The Jump Out Boys* that the child allegedly appeared in. The statements about Brown were defamatory.

21.     On February 9, 2019, Brown asked legal counsel for Dash in the Lawsuit 1, to have Dash retract the statements at Exhibits B-H.  See Exhibit I.  Counsel for Dash did not respond.

22.     In a deposition associated with Lawsuit 1 that occurred on November 21, 2019, the defendants, through Dash, testified that they were going to ruin Brown and make sure that Brown never practiced law again.

23.     On November 21, 2019, at Dash's deposition in New York City, Dash continued to  threaten to "ruin" Brown's career and made several additional threats before his deposition was terminated after the host law firm called the New York City Police Department due to  Dash's actions at the deposition in order to have Dash leave the offices.

24.     In November 2019, Magistrate Judge Hon. Judge Lehrburger sanctioned Dash for his actions in the Lawsuit and ordered Dash to pay all costs and expenses associated with the deposition. The Court also chastised Dash for failing to appear in Boston, MA for his court ordered deposition in September/October 2019.

25.     Lawsuit 1 is still pending.

**Brooks "Mafietta" Litigation**

26.     In February 2019, Brown filed litigation against the Defendants on behalf of Edwyna Brooks. Brooks, et al. v. Dash, et al, 19-1944-JSR in the Southern District Of New York ("Lawsuit 2") (The defendants were accused

of trademark and copyright infringement relating to Brooks book series and the film entitled "Mafietta".

27.     In July 2019, the deposition of Dash/Poppington occurred in Lawsuit 2.  At the deposition, Dash made threats of ruining Brown's career and made statements such as Brown's kids hated Brown and that Dash has sexual relations with Brown's wife/girlfriend. Dash testified that Brown was a "clown" and a "bubblegum lawyer". Dash also indicated on multiple occasions that he was going to make a documentary about Brown to ruin Brown. The statements were made deposition and to third parties in 2019 in various interviews in which Dash appeared in 2019 and 2020.

28.     In September 2019, Plaintiff won summary judgment on behalf of Brooks relating to trademark infringement.   In a separate decision, Dash was also sanctioned and ordered to pay for all costs associated with his deposition in July 2019 associated with Lawsuit 2.

29.     A trial occurred in Lawsuit 2 in January 2020, and on April 15, 2020, Brooks was awarded $300,000.00 against Poppington and Dash. In a scathing opinion for judgment, the Hon U.S. Judge Jeb Rakoff commented on Dash's outrageous behavior at the trial and his personal remarks about Brown during the trial (Docket Entry 71 footnote 3, Brooks v. Dash). To Quote the Hon. Judge Jeb Rakoff:

> To mention just a few of the many instances of Dash's disruptive behaviors, Dash repeatedly disrupted the trial testimony of Edwin Rush, shouting out answers to questions directed at the witness, loudly accusing the witness of "lying," and repeatedly making gestures and uttering unpleasant noises. Tr. 1/21/2020, at 51:21-52:5, 52:17-53:3. And by way of example of Dash's gross incivility, during cross-examination, Dash characterized plaintiff's attorney's breath as "doo-doo." Tr. 1/23/2020, at 49:23-50:2. (Dash had engaged in similar obscene attacks on plaintiff's counsel during Dash's deposition. See, e.g., id. at 50:14-24 (quoting from deposition).

## Bunn Litigation

30.     In December 2019, Plaintiff was hired by Monique Bunn ("Bunn") to file a claim for conversion, sexual assault and negligence against the defendants for actions that occurred in April 2019. Bunn v. Dash, et al, 19-11804-JSR in the Southern District Of New York ( In January 2019, default entered against the Defendants due to their failure to appear) ("Lawsuit 3"). This action has been transferred to the Central District of California.

31.     In December 2019 and January 2020, the defendants, angry that a third client hired Plaintiff, began a second public campaign, now claiming that Brown was under investigation by the Federal Bureau of Investigation ("FBI") for extortion. The defendants provided a video about Bunn to multiple media outlets online (including World Star and All Hip Hop) which contained defamatory information about Brown. Dash also published the material on his Instagram. See Exhibit J.

32.     In December 2019/January 2020, Dash conducted an in-person radio interview ("interview") while in Hawaii (KKCR Radio) and accused Brown of extorting Dash and Dash indicated that Brown was being investigated by the FBI during the radio interview relating to the Lawsuit 1, Lawsuit 2 and/or Lawsuit 3. Dash's claims were knowingly false.

33.     Dash also stated during the interview in Hawaii in December 2019 that Brown had filed three (3) "phony" claims against him.  Dash also indicated in the same interview that Brown "steals" from people. Dash later published the same allegations in other forums.

34.     From December 2019 through February 2020, in social media posts/videos, the defendants published that Brown was under investigation by the FBI for extortion. See Exhibit J.  The statement/video was a knowingly false statement and designed to harm the reputation of Brown. The knowingly false posting/video by Dash have received over 756,000 views on the Worldstar Hip Hop website and over 251,000 views on Dash's Instagram account. Over One Million (1,000,000) views of the false statement has occurred. Exhibit J. The views on the video continues to rise and Dash continues to slander Brown. See https://www.worldstarhiphop.com/videos/video.php?v=wshh521J2N5gO2veKXNi. Brown has never been contacted by the FBI about any claim of

extortion relating to Dash and Brown was never been under investigation for extortion by the FBI.

35.     In a television interview, Dash falsely claimed Brown called the New York Police Department  (unrelated to Dash's behavior during Lawsuits 1-3) on Dash to have Dash arrested for Dash's failure to pay child support to Rachel Roy and Cindy Morales on *Fox 5* in  New York City on November 25, 2019. Brown has nothing to do with those cases and is not counsel in those child support matters. https://www.fox5ny.com/news/damon-dash-arrest-for-failed-child-support-payment-was-a-set-up.  The defendants are doing all that they can to ruin Brown's career and falsely claimed that Brown set Dash up to be arrested for the child support matter.[1]

36.     While Dash was in New York, he went to the *Breakfast Club* radio show in January 2020, after the issuance of preliminary injunctions against Dash in Lawsuits 1 & 2, Dash stated that Brown had filed three frivolous claims against him in New York. https://www.youtube.com/watch?v=HIFqoF4C5wA (despite losing the trademark matter in Lawsuit 2 on summary judgment as well).  Over 1.4 Million (1,400,000) viewers watched the *Breakfast Club* interview on youtube, after the national radio show aired which has over One Million (1,000,000) daily listeners/viewers, syndicated in 90 radio markets and airs daily  on REVOLT TV, owed by Shawn "Diddy" Combs. https://en.wikipedia.org/wiki/The_Breakfast_Club_(radio_show).  REVOLT is a popular station that airs on Xfinity in Massachusetts on channels 187 and 1637 (RLVT).  It also aired in RLVT in New York. Dash is using his celebrity to attempt to ruin Brown's career. Dash is harming Brown's career.

37.     Brown's family and clients in New York, Texas, Nevada, Georgia, Illinois, Massachusetts and other states have seen Dash's statements and have questioned Brown about the defamatory statements of Dash. Prospective clients have also seen the defamatory statements and have asked Brown about Dash's comments.

38.     Brown uses Instagram and the Defendants have started the hashtag on Instagram #chrisbrownthelawyer, designed to publish negative and defamatory statements about Brown to harm Brown's career. Exhibit K. The Defendants have purposefully directed all their statements towards Brown, a Massachusetts resident and intended to cause harm to Brown.

---

[1] False attribution of statements or actions to individuals constitute defamation. Schrottman v. Barnicle, 437 N.E.2d 20 (1982).

## LEGAL DEFAMATION STANDARDS

39.     Massachusetts defamation law defines defamation as a term for a legal claim arising from harm to a person's reputation, which is caused by a false statement of fact communicated to a third-party without privilege. Defamation includes both libel (written defamation) and slander (spoken defamation). Langadinos v. Bd. Of Trustees of Univ. of Massachusetts, 2013 U.S. Dist. LEXIS 141341, 2013 WL 5507042 (D. Mass. Sept. 30, 2013). In Massachusetts, defamation generally requires a plaintiff to show that the false statement was "capable of damaging his or her reputation in the community and either caused economic loss or is actionable without proof of economic loss." White v. Blue Cross & Blue Shield of Mass., Inc., 809 N.E.2d 1034, 1036 (Mass 2004). Furthermore, Massachusetts courts have noted, "Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt." Correllas v. Viveiros, 572 N.E.2d 7, 10 (1991), citing Merrill v. Post Publishing Co., 197 Mass. 185, 191-192 (1908).

40.     In order for Massachusetts defamation plaintiffs to succeed in their libel or slander claim, they must prove the following five (5) elements:

- A defamatory statement
- About the plaintiff
- Published without privilege to a third-party
- With fault of at least negligence on the part of the defendant
- The statement either caused the plaintiff economic loss or was of the type that is actionable without proof of economic loss (defamation per se). Oberg v. City of Taunton, 972 F.Supp.2d 174, 205 (D. Mass. 2013).

41.     Massachusetts recognizes defamation per se in cases involving prejudice to plaintiff's business. Ravnikar v. Bogojavlensky, 438 Mass. 627 (Mass. 2003). The statement either caused the plaintiff economic loss (traditionally referred to as "special damages" or "special harm"), or is actionable without proof of economic loss. See *Restatement (Second) of Torts*, supra at § 558(d), § 575 comment b. Four types of statements are actionable without proof of economic loss: (1) **statements that constitute libel**, see Shafir v. Steele, 431 Mass. 365, 373 (2000); (2) **statements that charge the plaintiff with a crime**; (3) statements that allege that the

8

plaintiff has certain diseases; and (4) **statements that may prejudice the plaintiff's profession or business**. See <u>Lynch v. Lyons</u>, 303 Mass. 116, 118-119 (1939). If the statement comes within one of these four exceptions, a plaintiff may recover noneconomic losses, including emotional injury and damage to reputation. See <u>Shafir v. Steele</u>, supra; *Restatement (Second) of Torts*, supra at § 622 comment b, § 623 comment a.

# COUNT I
## DEFAMATION OF CHARACTER-SLANDER
## <u>BROWN AGAINST DEFENDANTS UNDER MASSACHUSETTS LAW</u>

42.    Brown repeats and realleges each of the preceding paragraphs 1-41.

43.    Dash has published and stated derogatory comments about Brown indicating that Brown is a con-man, a crooked lawyer, robs children and is under investigation by the FBI. The statements were not privileged and designed to harm Brown's business. The statements appear at Exhibits B-J.

44.    The Defendants statements are untrue and false and the actions of the Defendants have damaged the reputation of Brown.

45.    The actions of the Defendants were designed to harm Brown.

46.    The actions of the Defendants were done with malice and disregard for the truth. A plaintiff must not only show actual malice, but also show common law malice – or spite and ill-will. <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S. 323, 94 S. Ct. 2997 (1974). Evidence that a defendant said she was going to "nail the (plaintiff) to the wall" and "destroy him" raised a triable issue as to whether the defendant acted with hatred, ill-will, or spite. <u>Stern v. Cosby</u>, 645 F. Supp. 2d 258 (S.D.N.Y. 2009).

47.    The Defendants have engaged in reckless behavior and disregard for the truth. The statements of Dash have defamed Brown and is prejudicial to his legal practice.  Brown has had to defend himself to his clients, perspective clients and other business about Dash's false statements and Dash has harmed Brown in his overall business.

## COUNT II
## DEFAMATION OF CHARACTER-LIBEL
## BROWN AGAINST DEFENDANTS UNDER MASSACHUSETTS LAW

48.     Brown repeats and realleges each of the preceding paragraphs 1-47.

49.     Dash has published and stated derogatory comments about Brown indicating that Brown is a con-man, a crooked lawyer, robs children and is under investigation by the FBI. The statements were not privileged and designed to harm Brown's business. The statements appear at Exhibits B-J.

50.     The Defendants statements are untrue and false.

51.     The actions of the Defendants have damaged the reputation of Brown.

52.     The actions of the Defendants were designed to harm Brown.

53.     The actions of the Defendants were done with malice and disregard for the truth.

54.     The Defendants have engaged in reckless behavior and disregard for the truth.

55.     Defendants actions have damaged Brown in his business and legal profession.

56.     Brown has had to defend himself to his clients, perspective clients and other business about Dash's false statements and Dash has harmed Brown in his overall business.

## COUNT III
## DEFAMATION OF CHARACTER-SLANDER
## BROWN AGAINST DEFENDANTS UNDER NEW YORK  LAW

57.     Brown repeats and realleges each of the preceding paragraphs 1-56.

58.     Under New York law, a claim for defamation must allege: (1) a false statement of fact, (2) about the [complainant], (3) published to a third party

without authorization or privilege, (4) through fault amounting to at least negligence, and (5) causing defamation *per se* or a special harm. Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation et al, No. 06-CV-1260, 2009 WL 4547792, at *8 (E.D.N.Y. Dec. 1, 2009) (Matusmoto, J.) (internal citations omitted). A statement that "tend[s] to injure another in his or her trade, business or profession" is defamatory *per se*. Stern v. Cosby, 645 F.Supp.2d 258, 273 (S.D.N.Y.2009) (citing Liberman v. Gelstein, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992)).

59.     Dash has published and stated derogatory comments about Brown indicating that Brown is a con-man, a crooked lawyer, robs children and is under investigation by the FBI. The statements were not privileged and designed to harm Brown's business. The statements appear at Exhibits B-J.

60.     The Defendants statements are untrue and false.

61.     The actions of the Defendants have damaged the reputation of Brown.

62.     The actions of the Defendants were designed to harm Brown.

63.     The actions of the Defendants were done with malice and disregard for the truth.

64.     The Defendants have engaged in reckless behavior and disregard for the truth.

65.     Defendants actions have damaged Brown in his business and legal profession.

66.     Brown has had to defend himself to his clients, perspective clients and other business about Dash's false statements and Dash has harmed Brown in his overall business.

## COUNT IV
## DEFAMATION OF CHARACTER-SLANDER
## BROWN AGAINST DEFENDANTS UNDER NEW YORK  LAW

67.     Brown repeats and realleges each of the preceding paragraphs 1-66.

68.     Under New York law, a claim for defamation must allege: (1) a false statement of fact, (2) about the [complainant], (3) published to a third party without authorization or privilege, (4) through fault amounting to at least negligence, and (5) causing defamation *per se* or a special harm. Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation et al, No. 06-CV-1260, 2009 WL 4547792, at *8 (E.D.N.Y. Dec. 1, 2009) (Matusmoto, J.) (internal citations omitted). A statement that "tend[s] to injure another in his or her trade, business or profession" is defamatory *per se*. Stern v. Cosby, 645 F.Supp.2d 258, 273 (S.D.N.Y.2009) (citing Liberman v. Gelstein, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992)).

69.     Dash has published and stated derogatory comments about Brown indicating that Brown is a con-man, a crooked lawyer, robs children and is under investigation by the FBI. The statements were not privileged and designed to harm Brown's business. The statements appear at Exhibits B-J.

70.     The Defendants statements are untrue and false.

71.     The actions of the Defendants have damaged the reputation of Brown.

72.     The actions of the Defendants were designed to harm Brown.

73.     The actions of the Defendants were done with malice and disregard for the truth.

74.     The Defendants have engaged in reckless behavior and disregard for the truth.

75.     Defendants actions have damaged Brown in his business and legal profession.

76.     Brown has had to defend himself to his clients, perspective clients and others about Dash's false statements and Dash has harmed Brown in his overall business.

WHEREFORE, The Plaintiffs demand a jury trial and the following:

1.      Judgment on all counts and an amount to be determined by the Court but no less than One Million Dollars ($1,000,000.00);
2.      Interest;
3.      Any other relief this Court deems just and equitable, and
4.      Punitive damages


CHRISTOPHER BROWN-Pro Se

Christopher Brown
100 State Street, Suite 900
Boston, MA 02109
617-728-9111
cbrown@brownrosen.com

November 23, 2020

# EXHIBIT A



## **Green Paper Roundtable**

With the help of the
*Berkman Center for Internet & Society at Harvard University*

June 25, 2014, 8:30 a.m. – 3:00 p.m.

Harvard University Law School
*Wasserstein Hall*
1585 Massachusetts Ave.
Cambridge, MA  02138

Webcast available at: http://video.isites.harvard.edu/liveVideo/liveView.do?name=uspto

### **AGENDA as of June 6, 2014**

| | |
|---|---|
| 8.30 – 9.00 | Registration and administrative matters |
| 9:00 – 9:15 | Opening statements and introductions |
| 9:15 – 10:15 | The legal framework for the creation of remixes |

                    **Allan Adler**—Association of American Publishers
                    **Chris Brown**—Brown & Rosen LLC
                    **Kyle Courtney**—Harvard University
                    **Anne Gilliland**—UNC Chapel Hill
                    **David Herlihy**—Northeastern University
                    **Walter McDonough**—Future of Music Coalition

**Jay Rosenthal**--NMPA

10:15 – 10:30  Contributions from observers at the event and online

10:30 – 11:00  **Coffee Break**

11:00 – 12:00  Statutory damages

> **George Borkowksi**—RIAA
> **Ronald Coleman**—Geotz Fitzpatrick
> **Jodie Griffin**—Public Knowledge
> **Alan Harrison**—IP Attorney
> **David Herlihy**-- Northeastern University
> **Meg Kribble**—American Association of Law Libraries
> **Jay Rosenthal**—NMPA
> **Jason Schultz**—NYU School of Law
> **Don Webber**—Don Webber IP LLC

12:00 – 12:15  Contributions from observers at the event and online

12:15 – 1:15         **LUNCH**

1:15 – 2:30         The first sale doctrine in the digital environment

> **Allan Adler--**Association of American Publishers
> **Kyle Courtney**—Harvard University
> **Alan Harrison**—IP Attorney
> **Meg Kribble**—American Association of Law Libraries
> **Keith Kupferschmid**—SIIA
> **David Newhoff**—Writer, Filmmaker, Blogger of "Illusion of More"
> **Jason Schultz**—NYU School of Law
> **Ben Sheffner**, MPAA
> **Ed Shems**, Graphic Artists Guild

2:30 -2:45         Contributions from observers at the event and online

2:45 – 3:00         Closing Remarks

# EXHIBIT B

**From:** Damon Dash [mailto:dd.ddash@gmail.com]
**Sent:** Monday, February 4, 2019 5:03 PM
**To:** Christopher Brown <cbrown@brownrosen.com>
**Cc:** Eric_Silverberg@nysd.uscourts.gov
**Subject:** Re: Webber et al v. Dash, 19 Civ. 610

Wrong lawyer dumb ass...you and your crew are clowns...your law career is over and
they scam cover up is gonna cost way more then you think...legally that is...and don't
think I didn't screen shoot just asking me to fight him...I can't wait for depositions...and
we're gonna sit in the same room face to face...I look forward to that day...see you soon

Sent from my iPhone

On Feb 4, 2019, at 10:08 AM, Christopher Brown <cbrown@brownrosen.com> wrote:

Mr. Silverberg:

Thank you.


Christopher Brown, Esq.
Managing Member
Brown & Rosen LLC
Attorneys At Law
100 State Street, Suite 900
Boston, MA 02109
617-728-9111 (T)
www.brownrosen.com



**From:** Eric_Silverberg@nysd.uscourts.gov [mailto:Eric_Silverberg@nysd.uscourts.gov]
**Sent:** Friday, February 1, 2019 6:14 PM
**To:** cbrown@brownrosen.com; dd.ddash@gmail.com
**Subject:** Webber et al v. Dash, 19 Civ. 610

Mr. Dash and Mr. Brown:

Attached you will find a revised order to show cause scheduling a preliminary inunction hearing

for February 12, 2019, an order canceling Monday's temporary restraining order hearing, and a revised scheduling order.  These three items have just been docketed.  Given the lateness of the hour, however, I am emailing them to you both directly so that there is no confusion about whether there is a temporary restraining order hearing scheduled for Monday -- there is not.

Since Defendant has been properly served in this case, his responsive papers must be filed with the Court by 5 PM EST (2:00 PM PST) on Friday, February 8.

This email is a one time courtesy.  All future communications with the Court should be in writing.

Eric Silverberg
Law Clerk to the Hon. Colleen McMahon
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007
212-805-6331

# EXHIBIT C

**From:** Damon Dash [mailto:dd.ddash@gmail.com]
**Sent:** Monday, February 4, 2019 5:09 PM
**To:** Christopher Brown <cbrown@brownrosen.com>; Erick Law <Ehoward.law@gmail.com>
**Cc:** Eric_Silverberg@nysd.uscourts.gov
**Subject:** Re: Webber et al v. Dash, 19 Civ. 610

Erick please get ready to really tighten this dude Chris Brown up...I want to make an example out of him publicly...they need to know lawyers can get sued to...like mike Cohen...ChRis who's your lawyer bro...let's get to it...your a con man to...and im putting a Group lawsuit against you seems I get dms everyday from your victims I'm gonna give you an example and the press will cover it...then I'm doing a doc about you...all of you

Sent from my iPhone

On Feb 4, 2019, at 2:03 PM, Damon Dash <dd.ddash@gmail.com> wrote:

Wrong lawyer dumb ass...you and your crew are clowns...your law career is over and they scam cover up is gonna cost way more then you think...legally that is...and don't think I didn't screen shoot just asking me to fight him...I can't wait for depositions...and we're gonna sit in the same room face to face...I look forward to that day...see you soon

Sent from my iPhone

On Feb 4, 2019, at 10:08 AM, Christopher Brown <cbrown@brownrosen.com> wrote:

Mr. Silverberg:

Thank you.


Christopher Brown, Esq.
Managing Member
Brown & Rosen LLC
Attorneys At Law
100 State Street, Suite 900
Boston, MA 02109
617-728-9111 (T)
www.brownrosen.com

18

**From:** Eric_Silverberg@nysd.uscourts.gov [mailto:Eric_Silverberg@nysd.uscourts.gov]
**Sent:** Friday, February 1, 2019 6:14 PM
**To:** cbrown@brownrosen.com; dd.ddash@gmail.com
**Subject:** Webber et al v. Dash, 19 Civ. 610

Mr. Dash and Mr. Brown:

Attached you will find a revised order to show cause scheduling a preliminary inunction hearing for February 12, 2019, an order canceling Monday's temporary restraining order hearing, and a revised scheduling order.  These three items have just been docketed.  Given the lateness of the hour, however, I am emailing them to you both directly so that there is no confusion about whether there is a temporary restraining order hearing scheduled for Monday -- there is not.

Since Defendant has been properly served in this case, his responsive papers must be filed with the Court by 5 PM EST (2:00 PM PST) on Friday, February 8.

This email is a one time courtesy.  All future communications with the Court should be in writing.

Eric Silverberg
Law Clerk to the Hon. Colleen McMahon
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007
212-805-6331

# EXHIBIT D

**From:** NYSD_ECF_Pool@nysd.uscourts.gov [mailto:NYSD_ECF_Pool@nysd.uscourts.gov]
**Sent:** Tuesday, February 5, 2019 1:19 PM
**To:** CourtMail@nysd.uscourts.gov
**Subject:** Activity in Case 1:19-cv-00610-CM Webber et al v. Dash Order on Motion for Conference

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### Southern District of New York

### Notice of Electronic Filing

The following transaction was entered on 2/5/2019 at 1:18 PM EST and filed on 2/5/2019
**Case Name:**          Webber et al v. Dash
**Case Number:**        1:19-cv-00610-CM
**Filer:**
**Document Number:**    15

**Docket Text:**
**ORDER terminating [14] Letter Motion for Conference. (1) I will not decide the motion on papers. (2) I leave issues of security to the U.S. Marshal Service. I am not concerned for your safety in the Courthouse. (3) I am aware of Mr. Dash's emails, since he sent them to me. They will be provided to law enforcement. (Signed by Judge Colleen McMahon on 2/5/2018) (mml)**

**1:19-cv-00610-CM Notice has been electronically mailed to:**

Christopher Lloyd Brown     cbrown@brownrosen.com

**1:19-cv-00610-CM Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=2/5/2019] [FileNumber=21591505-0
] [193b1cc0c50df776ecd7175cea948527be2ace2b16de24a3a7dcfa3e0b012d5b4bc
3839584791929156075c97c2dd8b9087ac690a9671266945ff2a837f5f9a4]]

# EXHIBIT E

**From:** Damon Dash [mailto:dd.ddash@gmail.com]
**Sent:** Wednesday, February 6, 2019 1:30 PM
**To:** Christopher Brown <cbrown@brownrosen.com>
**Cc:** Eric Howard Esq. <ehoward.law@gmail.com>
**Subject:** Re: Webber v. Dash

See the judge even knows your a con man coward already...you guys owe a lot of good people money...I have a lot of testimonials from good people on different projects that you guys have robbed...your ego is going to put all of you In a really bad place Legally...and it will cost so much more then you will ever imagine financially...what you guys have done is straight dumb...and your doing more dumb shit to cover it up but the more you try to cover the more comes out...you guys robbed children?...I'm making a documentary about y'all gonna be great...already have interest from network...you guys are a gold mine! Keep it up...the culture will learn so much from you...thank you for that

Sent from my iPhone

On Feb 5, 2019, at 10:30 AM, Christopher Brown <cbrown@brownrosen.com> wrote:


Christopher Brown, Esq.
Managing Member
Brown & Rosen LLC
Attorneys At Law
100 State Street, Suite 900
Boston, MA 02109
617-728-9111 (T)
www.brownrosen.com


**From:** Damon Dash [mailto:dd.ddash@gmail.com]
**Sent:** Tuesday, February 5, 2019 12:57 PM
**To:** Christopher Brown <cbrown@brownrosen.com>
**Cc:** Eric Howard Esq. <ehoward.law@gmail.com>
**Subject:** Re: Webber v. Dash

So what it's not gonna help you I'm suing your punk ass

Sent from my iPhone

On Feb 5, 2019, at 7:47 AM, Christopher Brown <cbrown@brownrosen.com> wrote:

See letter filed today.

Christopher Brown, Esq.
Managing Member
Brown & Rosen LLC
Attorneys At Law
100 State Street, Suite 900
Boston, MA 02109
617-728-9111 (T)
www.brownrosen.com

<Letter to Court re appearance and witness tampering FINAL 2 -5-19.pdf>
<Letter to Court Dash response today 2-5-19.pdf>

# EXHIBIT F



 AT&T

**Video**



**duskopoppington**

**77,787 views**

**duskopoppington** Was about to get to day 3 but I forgot about this one...more lying from #toneywhite and I've been getting dms from other victims of #tonywhite @muddfilms @joshawebber next after I prove my point I'm going to give other people a platform to tell there story on how these dudes have conned them...this shit is gonna stop #chrisbrown(not the singer) please tell me what kind of lawyer would represent guys like this...you seem to profit from their con do you have to go to (legally of course) ... There are actually lawyers that make a living helping bad people steal money from good people and turn a blind eye for the check #badbuisness

25

# EXHIBIT G



 **duskopoppington** ...



   

**29,341 views**

**duskopoppington** Day 5 of me directing the list (not dear frank) notice my daughter @tallulah_dash directing with me... only the boss can do that... do you know this coward @joshawebber tried to get a order of protection against me?...and tried to get slick and pretend he lives in New York when we all know he lives in la but filed in ny so he can try to con the judge there ...he is still pretending he directed my movie..and comes to my building with the police acting tough then files an order of protection like a female def not man shit ..#culturvultures are so funny when they are busted they try anything to save face...keep trying.. your busted lying trying to take credit for another mans movie ... and they're low life



**29,341 views**

**duskopoppington** Day 5 of  me directing the list (not dear frank) notice my daughter @tallulah_dash directing with me... only the boss can do that... do you know this coward @joshawebber tried to get a order of protection against me?...and tried  to get slick and  pretend he lives in New York  when we all know he lives in la but filed in ny  so he can try to con the judge there ...he is still pretending he directed my movie..and comes to my building with the police acting tough then files an order of protection like a female def not man shit ..#culturvultures are so funny when they are busted they try anything to save face...keep trying.. your busted  lying trying to take credit for another mans movie ... and they're low life lawyer Chris brown (not the singer) is still speaking for @muddfilms and @joshawebber but I don't know why I'm suing him to..Lawyers for con artist are con artist as well... any girl that messes with @joshawebber know he tried to get an Order of protection against another man that's the coward your dealing with...never let him act tough he's a scared Lil Assisant eww #staytuned @damedashstudios @culturevultures_book in

    

# EXHIBIT H



‹ **Video** ↺

 duskopoppington ⋯



♡ ◯ ⌁ 

**26,399 views**

**duskopoppington** Wow so this on @iambigbootsie
page...Now this is Disgusting... apparently
@joshawebber #tonywhite and their crooked lawyer
Chris Brown (not the singer) and I suspect

⌂ ⚲ ⊞ ♡ ◯



**26,399 views**

**duskopoppington** Wow so this on **@iambigbootsie** page...Now this is Disgusting... apparently **@joshawebber #tonywhite** and their crooked lawyer Chris Brown (not the singer) and I suspect **@muddfilms** robbed a 7 year old on another movie this is crazy and it has to stop there will be a class action suit...who ever got robbed by these clowns holla...lawsuit on me **#staytuned** kids bro? ...how do you guys live with yourself? Ewwww **@culturevultures_book** available now **@tmz_tv @vanlathan @variety @dailymail @pagesix @theshaderoom**

View all 84 comments

FEBRUARY 5, 2019

    



**Video**

 **damedashstudios**



**3,287 views**

**damedashstudios** Wow so this on @bigbootsie page...Now this is Disgusting... apparently @joshawebber #tonywhite  and their crooked lawyer Chris Brown (notthe lawyer) and I suspect



             

**3,287 views**

**damedashstudios** Wow so this on @bigbootsie
page...Now this is Disgusting... apparently
@joshawebber #tonywhite  and their crooked lawyer
Chris Brown (notthe lawyer) and I suspect
@muddfilms robbed a 7 year old on another movie
this is crazy and it has to stop there will be a class
action suite...who ever got robbed by these clowns
holla...lawsuit on me #staytuned  kids bro? ...how do
you guys live with yourself? Ewwww

View all 11 comments

FEBRUARY 5, 2019

# EXHIBIT I

**From:** Christopher Brown [mailto:cbrown@brownrosen.com]
**Sent:** Saturday, February 9, 2019 11:23 PM
**To:** 'natraj@turturrolawpc.com' <natraj@turturrolawpc.com>
**Subject:** Retraction demanded from Dash and Poppington for defamation of Brown

At this time it is demanded that Mr. Dash and Poppington LLC ("Poppington") retract and apologize publicly by February 11, 2019 by 9am est, for all the defamatory posts that appear on Instagram and emails created/posted/sent by Dash and Poppington in regards to Attorney Chris Brown.  The posts and emails included the following:

Dash in February 2019, Dash emailed McMahon and indicated that Brown was a con-man.

In a February 2019 email Dash stated to his Attorney Eric Howard, that Brown was a "con-man".  Dash also indicated that Brown was involved in robbing children in the same email.

In a January 2019 posting on the official Poppington Instagram, Dash indicated  that Brown is a lawyer that makes a living helping bad people steal money from good people.

In a January 2019 posting on the official Poppington Instagram, Dash identifying Brown, stated that lawyers for con artist are con artist.

In a February 2019 posting on the official Poppington Instagram, Dash stated that Brown is a crooked lawyer that robbed a 7 year old.

Failure to comply will lead to litigation.

Christopher Brown, Esq.
Managing Member
Brown & Rosen LLC
Attorneys At Law
100 State Street, Suite 900
Boston, MA 02109
617-728-9111 (T)
www.brownrosen.com

# EXHIBIT J





# This is what setting up a black man looks like live.. ▾



 **duskopoppington** ✔ · **Follow**
December 27, 2019



Chris Brown the Lawyer is
currently being investigated by the FBI
for extortion.

**251,634 views · 1,482 comments**

       ···          ⌃ Up Next

‖ ━━━━━━━━━━━━━━━━━━━━●        0:10

# EXHIBIT K





